IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| EDUARDO ABUD-MENDOZA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ACCENTURE, LLP, an Illinois limited ) <br> professional service limited liability partnership; ) <br> AETNA LIFE INSURANCE CO.; AETNA ) <br> U.S. HEALTHCARE; and AETNA, INC., ) <br> Connecticut corporations, ) <br> ) <br> Defendants. ) <br> _____) | Case No. CV 06-0223-S-EJL <br><br> **REPORT AND RECOMMENDATION** |

Currently pending before the Court are the Aetna Defendants' Motion to Dismiss (Docket No. 8), Plaintiff's Motion for Partial Summary Judgment (Docket No. 12), the Aetna Defendants' Cross Motion for Summary Judgment (Docket No. 25), and Plaintiff's Motion for Leave to File Plaintiff's Third Affidavit (Docket No. 38). Having carefully reviewed the record, and otherwise being fully advised, the Court enters the following Report and Recommendation pursuant to 28 U.S.C. § 636(b).

**I.**

**BACKGROUND**

This action arises out of Plaintiff's claim to long term disability ("LTD") benefits from Defendants.

**REPORT AND RECOMMENDATION - 1**

A.     **Factual Background**

Defendant Accenture LLP ("Accenture"), formerly known as Anderson Consulting, SC,[1] offered Plaintiff a position as an associate partner by letter dated April 24, 2006. *Plaintiff's Statement of Undisputed Facts*, ¶ 1 (Docket No. 14). This letter stated that "[a]n extensive benefits program including medical and life insurance, and employee assistance [will be] available to you upon employment, subject to the standard eligibility requirements." *Abud-Mendoza First Affidavit*, Ex. 1 (Docket No. 15, Att. 2). Plaintiff accepted the job and began work on May 9, 2000.

Accenture maintained a group long term disability insurance policy ("LTD Plan" or "Plan") with benefits insured and underwritten by Aetna Life & Casualty.[2] *Abud-Mendoza First Affidavit*, Ex. 3 at p. 6 (Docket No. 15, Att. 2). The Long Term Disability Policy issued by Aetna (LTD-299285), provides that an employee is eligible to request LTD coverage at initial enrollment, i.e., during the 31 days after the first of the month following the first day he begins work. *Abud-Mendoza First Affidavit*, Ex. 8, p. 14 (Docket No. 15, Att. 4). The Plan Summary states that an employee "must complete an enrollment form even if you do not want LTD coverage." *Id.* at Ex. 3, p. 6 (Docket No. 15, Att. 2). If an employee does not complete the initial enrollment, the Plan requires the employee to provide "proof of good health" and to enroll during an annual enrollment period. *Id.* at p. 8. "Providing proof of good health means . . . complet[ing] an evidence of insurability statement." *Id.* The Plan Summary informs employees

---

[1] In January of 2001, Anderson Consulting changed its name to Accenture LLP. *Zackrison Affidavit*, p. 2 (Docket No. 23, Att. 2).

[2] There are three Aetna entities named as defendants. The Court will collectively refer to these entities as "the Aetna Defendants" or "Aetna."

**REPORT AND RECOMMENDATION - 2**

that "[e]vidence of insurability forms are available from your Country Benefits Coordinator." *Id.*

It is undisputed that Plaintiff did not initially enroll in the LTD Plan when he was hired, nor did he pay any LTD premiums in the year 2000. Plaintiff claims that Accenture did not provide him with an enrollment form for LTD coverage when he was hired, nor was he told that he had to enroll in the Plan to be eligible for LTD coverage. *Abud-Mendoza First Affidavit*, pp. 2-3 (Docket No. 15, Att. 1). Plaintiff asserts that it was not until July of 2001 that he first became aware that he did not have LTD coverage. *Abud-Mendoza First Affidavit*, p. 2 (Docket No. 15, Att. 1); *Abud-Mendoza Second Affidavit*, ¶ 2 (Docket No. 28, Att. 1).

In an email from Aetna employee Michaela Robinson to several Accenture employees, she states that Plaintiff "was enrolled/effective for LTD (and life insurance) coverage in August 2001," but goes on to comment that "it appears as though he was a late enrollee and therefore, would have required [evidence of insurability] for both life and LTD OR was not eligible to enroll at all." *Abud-Mendoza First Affidavit*, Ex. 6 (Docket No. 15, Att. 4). She notes also that Rebecca Sterchi with Accenture "has indicated that this [employee's] late enrollment in LTD was caused by internal HR problems with Accenture, [and] thus were not the employee's fault." *Id.* Ms. Robinson's observation was based on an earlier email from Ms. Sterchi in which Ms. Sterchi stated:

> It was discovered that due to coordinator turnover the coordinator at the time of [Plaintiff's] start date did not inform Mr. Abud of his options. Mr. Abud was not told he had to enroll in the coverage, sign an enrollment form and pay for coverage. Later, summer 2001, he asked his local benefits group to confirm his coverage. It was at that time it was discovered although he thought he had been covered he had not been. He was enrolled in August 2001 and *began paying premiums*.

*Abud-Mendoza First Affidavit*, Ex. 7 (Docket No. 15, Att. 4) (emphasis added).

**REPORT AND RECOMMENDATION - 3**

Aetna has indicated that it did not receive Plaintiff's LTD coverage application until around September of 2001 and that the application was not accompanied by an evidence of insurability (proof of good health) form. *Seccombe Affidavit*, ¶ 6 (Docket No. 25, Att. 2). Plaintiff had a yearly checkup on June 28, 2001, *Abud-Mendoza First Affidavit*, Ex. 4 (Docket No. 15, Att. 3), and he asserts that he provided Accenture with a copy of his checkup report in July of 2001 when he applied for LTD coverage and that this satisfies the proof of good health requirement for employees who enroll in the LTD Plan after the initial enrollment period. *Abud-Mendoza Second Affidavit*, ¶ 3 (Docket No. 28, Att. 1).

On August 7, 2001, shortly after his yearly checkup, Plaintiff was definitively diagnosed with Parkinson's Disease. *Abud-Mendoza First Affidavit*, Ex. 5, p. 2 (Docket No. 15, Att. 3). Shortly thereafter, he filed an application for benefits. On September 28, 2001, Accenture submitted Plaintiff's LTD benefits application to Aetna. *Abud-Mendoza First Affidavit*, Ex. 5 (Docket No. 15, Att. 3). Accenture then terminated Plaintiff's employment on October 1, 2001. *Abud-Mendoza Second Affidavit*, ¶ 5 (Docket No. 28, Att. 1). By letter dated November 30, 2001, Aetna denied LTD Plan coverage and Plaintiff's claim for benefits. *Abud-Mendoza First Affidavit*, Ex. 9 (Docket No. 15, Att. 7). Aetna specified that it did not receive an initial request for enrollment after Plaintiff's hire and had not received a request during the annual enrollment period accompanied by proof of good health. *Id.* The denial letter informed Plaintiff that he was "entitled to a review of this determination" and that "[w]ritten request for review must be mailed or delivered within 60 days following receipt of this explanation." *Id.* Plaintiff submitted a letter requesting review, but it was not until February 25, 2002 that he did so, more than 60 days

**REPORT AND RECOMMENDATION - 4**

after Aetna claims Plaintiff received an email notifying him that his claim had been denied. On this basis, Aetna denied Plaintiff's request for review.

In January of 2002, before he requested that Aetna review his benefits denial, Plaintiff filed suit in Mexico against Aetna Life Ins. Co., Aetna Inc., Aetna U.S. Healthcare, Inc., and Accenture. *Seccombe Affidavit*, Ex. 1, p. 13 (Docket No. 25, Att. 2). Plaintiff's fifth claim in that litigation is based on his assertion that he has a right to disability insurance. *Id.* at p. 20.

### B.     Procedural Background

On May 3, 2006, Plaintiff commenced the instant action by filing a Complaint in the District Court for the Fourth Judicial District of the State of Idaho. *Notice of Removal*, Ex. B (Docket No. 1, Att. 3). Plaintiff's Complaint includes claims for benefits under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq.* ("ERISA"), wrongful deprivation of benefits, breach of fiduciary duty, intentional infliction of emotional distress, negligent infliction of emotional distress, and bad faith. *Id.* On June 6, 2006, the Aetna Defendants removed the action to this Court.

The Aetna Defendants then filed a Motion to Dismiss, arguing that ERISA preempts all of Plaintiff's state-law claims and seeking dismissal of those claims. *Memorandum in Support of Motion to Dismiss*, p. 3 (Docket No. 8, Att. 2). Defendant Accenture joined in the Aetna Defendants' Motion and offered additional arguments for the dismissal of Plaintiff's state law claims. *Accenture's Response to Motion to Dismiss*, p. 2 (Docket No. 11). Plaintiff responded by filing a Motion for Partial Summary Judgment seeking adjudication of whether he has standing to bring a claim under ERISA. (Docket No. 12). The Aetna Defendants filed a Cross-Motion for Summary Judgment on all claims. (Docket No. 25, Att. 1).

**REPORT AND RECOMMENDATION - 5**

The Court held a hearing on these motions on October 10, 2006, at which time the Court allowed the parties an additional week to submit supplemental briefing on the issues discussed at the hearing. The Court also ordered that the parties submit a joint status report detailing any agreements counsel may have reached on some of the issues raised at the hearing. The parties submitted supplemental briefs and a joint status report on October 17, 2006. (Docket Nos. 41, 42, 43, 44). Because this status report indicated that the parties were still discussing some issues and might be able to resolve those issues, the Court allowed the parties additional time to discuss the issues and ordered a second status report. (Docket No. 45). On October 26, 2006, the parties submitted a second joint status report detailing the issues on which they had agreed and setting forth the issues remaining for the Court's consideration. (Docket No. 46). In light of this additional information and the record as a whole, the Court now considers the pending motions.

## II.

## PRELIMINARY MATTERS

A.     **The Mexico Litigation & Plaintiff's Third Affidavit**

The Aetna Defendants requested that the Court dismiss this action because a similar action is pending between the parties in Mexico. *See Memorandum in Support of Cross-Motion*, p. 10 (Docket No. 24, Att. 5). In their Second Joint Status Report, the parties have agreed that "the court need not decide any issue regarding the litigation pending in Mexico at this time." *Second Joint Status Report*, ¶ 6 (Docket No. 46). Accordingly, the Court recommends that the District Court deny the Aetna Defendants' Motion for Summary Judgment to the extent it is based on the pendency of a similar action in Mexico.

Plaintiff filed a Motion for Leave to File Plaintiff's Third Affidavit to provide documents from the Mexico litigation. (Docket No. 38). Although Plaintiff's Third Affidavit provides information about the Mexico litigation, which is no longer at issue in the pending motions, defense counsel stated at the hearing that they have no objection to the granting of Plaintiff's Motion. For this reason, and because Plaintiff filed the affidavit late only because he did not receive the documents until after all of his briefing was due, it is appropriate to allow the filing of Plaintiff's Third Affidavit, and it is recommended that the district court do so.

### B. The Aetna Defendants

The Aetna Defendants also requested in their summary judgment Motion that the Court determine which Aetna Defendants have been properly named in this action—Aetna Inc., Aetna Life Insurance Company, and/or Aetna US Healthcare. *Memorandum in Support of Cross Motion for Summary Judgment*, p. 10 (Docket No. 25, Att.4). However, the parties have now agreed that the Court "need not decide any question concerning which of the Aetna [D]efendants should be named in this lawsuit." *Second Joint Status Report*, ¶ 5 (Docket No. 46). If the Court does not grant the Aetna Defendants' Cross-Motion for Summary Judgment, Plaintiff has agreed to name only Aetna Life Insurance Company as a defendant in an amended complaint, and the Aetna Defendants have agreed to not raise the failure to name the correct Aetna entity as a defense to Plaintiff's amended complaint. *Id.* For these reasons, it is recommended the District Court determine that the Aetna Defendants' request to decide which Aetna entities should be named as defendants is moot because of the parties' agreement.

**REPORT AND RECOMMENDATION - 7**

  **C.**  **Scheduling Matters**

  In their Second Joint Status Report the parties note their agreement that the deadline for completing initial disclosures should be extended to December 8, 2006.  *Second Joint Status Report*, ¶ 8 (Docket No. 46).  Because the status of Plaintiff's claims and its action against the Aetna Defendants have been under consideration in the pending motions, there exists good cause for the requested extension and it is recommended that the District Court grant the parties' request to extend the deadline for initial disclosures.

  In addition, it is recommended that the District Court approve the stipulations contained in the Second Joint Status Report, including the parties' agreement that Plaintiff will file an amended complaint within two (2) weeks of the filing of the District Court's order regarding this Report and Recommendation.  *See id.* at ¶ ¶ 1, 9.

## III.

## MOTION TO DISMISS

 The Aetna Defendants request that the Court dismiss all state law claims as preempted by ERISA.  (Docket No. 8, Att. 1).  Accenture joined in this request.  (Docket No. 11).  After the hearing on this Motion, the parties agreed that "this litigation is governed by ERISA and that the court need not decide whether any count of the current complaint is preempted by the ERISA statutes."  *Second Joint Status Report*, ¶ 1 (Docket No. 46).  Plaintiff has agreed to file an amended complaint that will omit counts four through six of the present complaint.  *Id.*  Based

**REPORT AND RECOMMENDATION - 8**

on the parties' agreement, it is recommended that the District Court grant, in part, the Motion to Dismiss, and dismiss counts four through six of the complaint.[3]

It is also recommended here that the District Court dismiss count three (for breach of fiduciary duty) as it relates to Accenture, pursuant to the parties' agreement that Plaintiff will not assert any claim for breach of fiduciary duty against Accenture. *Second Joint Status Report*, ¶ 4 (Docket No. 46). To the extent Plaintiff's breach of fiduciary claim against the Aetna Defendants is made pursuant to state law, it also is preempted and should be dismissed. However, because ERISA provides for claims based on an alleged breach of fiduciary duty, 29 U.S.C. § 1109, to the extent count three is based on ERISA, it is not preempted. *See also* 29 U.S.C. § 1002(21)(A) (providing that a person is a fiduciary with respect to a plan to the extent he exercises any discretionary authority or control regarding management or administration of the plan). Accordingly, it is recommended that count three, as it relates to the Aetna Defendants, not be dismissed.

## IV.

### MOTIONS FOR SUMMARY JUDGMENT

**A.      Standards of Law**

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56, which provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings,

---

[3] These state law claims are for intentional infliction of emotional distress, negligent infliction of emotional distress, and bad faith. Even if the parties had not agreed to dismiss these claims, case law supports dismissing the claims as preempted by ERISA. *See Dishman v. Unum Life Ins. Co.*, 269 F.3d 974, 983 (9th Cir. 2001); *Aetna Life Ins. Co. v. Bayona*, 223 F.3d 1030, 1034 (9th Cir. 2000); *Crull v. Gem Ins.*, 58 F.3d 1386, 1390 (9th Cir. 1995).

**REPORT AND RECOMMENDATION - 9**

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

Under Rule 56, summary judgment is required if the nonmoving party fails to make a showing sufficient to establish the existence of an element that is essential to the party's case and upon which the party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the nonmoving party fails to make such a showing on any essential element of the party's case, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323. *See also* Fed. R. Civ. P. 56(e).[4]

According to Rule 56, an issue must be both "material" and "genuine" to preclude entry of summary judgment. An issue is "material" if it affects the outcome of the litigation. An issue is "genuine" when there is "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial," *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir. 1975) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)), or when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

---

[4] Fed R. Civ. P. 56(e) states that, in responding to a motion for summary judgment,
> an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

**REPORT AND RECOMMENDATION - 10**

The Ninth Circuit Court of Appeals cases are in accord.  *See, e.g., British Motor Car Distribs., Ltd. v. S.F. Auto. Indus. Welfare Fund*, 882 F.2d 371 (9th Cir. 1989).

In ruling on summary judgment motions, the court does not resolve conflicting evidence with respect to disputed material facts, nor does it make credibility determinations.  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  Moreover, all inferences must be drawn in the light most favorable to the nonmoving party.  *Id*. at 631.  That is, "if a rational trier of fact might resolve the issue in favor of the nonmoving party, summary judgment must be denied."  *Id*.

In order to withstand a Motion for summary judgment, a nonmoving party:

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

*British Motor Car Distribs.*, 882 F.2d at 374 (citation omitted).  Moreover, where the moving party meets its initial burden of demonstrating the absence of any genuine issue of material fact, the nonmoving party must "produce 'specific facts showing that there remains a genuine issue for trial' and evidence 'significantly probative' as to any [material] fact claimed to be disputed." *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983) (citing *Ruffin v. County of L.A.*, 607 F.2d 1276, 1280 (9th Cir. 1979)).

In recent years the Supreme Court, "by clarifying what the non-moving party must do to withstand a Motion for summary judgment, has increased the utility of summary judgment." *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th

**REPORT AND RECOMMENDATION - 11**

Cir. 1987). Therefore, "[n]o longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *Id*. A material fact is

> one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. The materiality of a fact is thus determined by the *substantive law* governing the claim or defense. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

*T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)) (emphasis added).

### B.  Plaintiff's Status as a Participant in the LTD Plan[5]

Plaintiff seeks partial summary judgment establishing that he has standing to sue as a participant in an ERISA plan. *Plaintiff's Memorandum in Opposition to Motion to Dismiss*, p. 2 (Docket No. 13). As discussed in Part III, *supra*, the parties agree that Plaintiff has standing. *See also Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 117 (1989) (explaining that a former employee, like Plaintiff, is eligible to receive a benefit "if he has 'a colorable claim' to vested benefits").[6] Thus, it is recommended that Plaintiff's Motion for Partial Summary Judgment be granted to establish that Plaintiff has standing to sue under ERISA. Whether he is

---

[5]  Plaintiff and Defendant Accenture have agreed that Plaintiff was a Plan participant during his employment with Accenture, *Second Joint Status Report*, ¶ 4 (Docket No. 46); however, Accenture has not joined in the Aetna Defendants' Motion for Summary Judgment, so their concession does not impact the Court's decision.

[6]  A civil action under ERISA may be brought by a participant "to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1). A "participant" means "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan." 29 U.S.C. § 1002(7). The United States Supreme Court has held that the term "participant" includes former employees who have "a colorable claim" to benefits, i.e., a colorable claim that he will prevail in a suit for benefits. *Firestone Tire*, 489 U.S. at 118.

**REPORT AND RECOMMENDATION - 12**

entitled to recover benefits under the Plan is an entirely different question, and one for which the Aetna Defendants have requested summary adjudication.[7]

The Aetna Defendants argue that Plaintiff did not comply with the prerequisites for coverage in the LTD Plan and, therefore, was never enrolled in the Plan and cannot recover anything from them under the Plan. *Aetna's Reply*, p. 3 (Docket No. 35).  Aetna asserts that it did not receive an application or premium until at least September of 2001, *see Seccombe Affidavit*, ¶ 6 (Docket No. 25, Att. 2), and Plaintiff was diagnosed with Parkinson's by August 7, 2001.  *Abud-Mendoza First Affidavit*, Ex. 5, p. 2 (Docket No. 15, Att. 2).

Plaintiff argues that "on account of a clerical error by [Accenture], he was not afforded the opportunity to accept or reject LTD insurance at the time of his hire in May of 2000," and that when he became aware in July of 2001 that LTD insurance was available he applied for the insurance and was advised that his application was accepted and he had an enrollment date of August 1, 2001.  *Response to Aetna's Cross-Motion*, p. 1 (Docket No. 30).  Aetna and Accenture provided in their policy that "any clerical error will not act to deny an eligible person insurance coverage on the correct date," and that Accenture "will certify clerical errors which include but are not limited to: lost application forms, premiums paid but not received or system input errors."  *Abud-Mendoza First Affidavit*, Ex. 8, p. 22 (Docket No. 15, Att. 5).

Regardless of whether any clerical error by Accenture is sufficient to make Plaintiff a participant in the LTD Plan, there is an issue of fact as to whether Plaintiff became a participant in the Plan.  On July 18, 2001, Hector Alvarez Andrade, an employee in the human resources

---

[7] As noted by Accenture, the relevant inquiry for standing and preemption issues is not whether a remedy exists for Plaintiff's claims, but whether the claims relate to an ERISA plan.

**REPORT AND RECOMMENDATION - 13**

department of Accenture, sent Plaintiff an email stating: "I'm confirming to you that you are now enrolled in the international insurance, your enrollment date will be August 1st, 2001, but your enrollment has already been processed."[8] *Abud-Mendoza First Affidavit*, Ex. 10 (Docket No. 15, Att. 7). Additionally, an email from another Accenture employee, Rebecca Sterchi, states that Plaintiff "was enrolled in August 2001 and *began paying premiums*." *Abud-Mendoza First Affidavit*, Ex. 7 (Docket No. 15, Att. 4) (emphasis added); *see also id.* at p. 2 (Docket No. 15, Att. 1).[9]

These emails from Accenture employees conflict with Aetna's assertion that it did not receive an LTD application until September of 2001. There is nothing in the record explaining why Accenture thought Plaintiff's enrollment had been processed and that he was covered by the LTD Plan beginning August 1, 2001, but (according to Aetna) Aetna had not accepted Plaintiff as a Plan participant.[10] Notably, Aetna apparently did not ask Accenture if it had received a proof of good health form from Plaintiff until October 18, 2001–after Plaintiff had already started paying premiums and during the time when Aetna was evaluating Plaintiff's claim for benefits under the Plan. *Abud-Mendoza Second Affidavit*, Ex. 14 (Docket No. 28, Att. 2).

---

[8] Plaintiff defines the term "international insurance" to mean "both LTD insurance and life insurance." *Abud-Mendoza Second Affidavit*, ¶ 4 (Docket No. 28, Att. 1). None of the Defendants have offered a different definition for this phrase.

[9] Robert Seccombe, on behalf of the Aetna Defendants, stated that Plaintiff did not accept LTD coverage when he was hired in May of 2000 and that no premiums were paid "during this period." *Seccombe Affidavit*, ¶ 4 (Docket No. 25, Att. 2). However, the Aetna Defendants do not address the issue of whether it accepted any premiums from August 1, 2001 to November of 2001.

[10] For this reason, it also is possible that a clerical error occurred and Plaintiff's application was misplaced for a period of time.

**REPORT AND RECOMMENDATION - 14**

Because Plaintiff had paid premiums into the Plan, had been informed that he had been enrolled in the Plan, and was not notified that he needed to provide additional information about his health to continue in the Plan, there exist genuine issues of material fact as to whether Plaintiff was a participant in the Plan.[11]  To grant the Aetna Defendants' Motion for Summary Judgment on this issue would require the Court to weigh evidence, resolve conflicting testimony or make credibility determinations, and to disregard the clear direction of the well-established case law to draw inferences in the light most favorable to the nonmoving party, all of which are prohibited when addressing motions brought pursuant to Rule 56.  Accordingly, it is recommended that the District Court deny the Aetna Defendants' request for summary judgment in their favor on Plaintiff's status as a Plan participant.

---

[11]  It is notable that Accenture's LTD Plan states the Claims Fiduciary, Aetna, has "discretionary authority in the review of claim payments (including eligibility for benefits claimed) and claimed denials under the terms of the Plan)." *Zackrison Affidavit*, Ex. B, p. 6 (Docket No. 23, Att. 2). The Plan also confirms that the proof of good health must be "approved by the Claims Fiduciary," i.e., Aetna.  *Id.*, Ex. B, p. 14.  Moreover, the Aetna policy provides that if any misstatement of fact as to an individual to whom the insurance relates "affects the existence or amount of insurance, the true facts will be used in determining whether insurance is in force under this policy and its amount."  *Abud-Mendoza First Affidavit*, Ex. 8, p. 24 (Docket No. 15, Att. 5).  Although these provisions indicate that Aetna had authority to determine whether Plaintiff was eligible for benefits claimed and to require proof of good health, they do not conclusively establish that Plaintiff did not become a Plan participant when he was advised he had been enrolled in the program and began paying premiums without Aetna's objection until a claim for benefits was submitted.  Accenture also has some discretion under the Plan.  *See, e.g.*, *Zackrison Affidavit*, Ex. B, § 1.2 (Docket No. 23, Att. 2) (providing that Accenture is an administrator of the Plan and is responsible for all fiduciary duties not delegated to Aetna); *Id.* at Ex. B, p. 19 (explaining that "any decisions on any matter within the discretion of the Administrator or its representatives made by them in good faith shall be binding on all persons"). Thus, although Plaintiff's claims may proceed at this point based on the current record, the ultimate success of those claims is another matter.

**REPORT AND RECOMMENDATION - 15**

### C.     Exhaustion

"[F]ederal courts have the authority to enforce the exhaustion requirement in suits under ERISA, and . . . as a matter of sound policy they should usually do so." *Amato v. Bernard*, 618 F.2d 559, 568 (9th Cir. 1980). The Aetna Defendants argue that, even if Plaintiff qualifies as a Plan participant, he failed to properly exhaust the required administrative remedies. *Memorandum in Support of Cross Motion for Summary Judgment*, p. 9 (Docket No. 25, Att. 4). As Aetna's denial letter informed Plaintiff, he had sixty days from receipt of the letter to submit a written request for review to Aetna. The letter stated, in relevant part:

> You are entitled to a review of this determination if you have questions or do not agree with the decision.
>
> To obtain a review, you or your representative should submit a request in writing to:
>
> > Aetna U.S. Healthcare
> > Disability Appeals Unit
> > 151 Farmington Avenue
> > Hartford, CT 06156-2970
>
> Your request should include the group name (i.e. the name of your employer), your full name, Social Security number, and any other pertinent identifying information.
>
> Additionally, your request should include all issues and comments that you would like to be considered. You are also entitled to a review of all documents pertinent to this decision. Written request for review must be mailed or delivered within 60 days following receipt of this explanation or such longer period as may be specified in your plan brochure or Summary Plan Description. Ordinarily, you will receive notification of the final determination within 60 days following receipt of your request. If special circumstances require an extension of time, you will be notified of such extension during the 60 days following receipt of your request.

*Abud-Mendoza First Affidavit*, Ex. 9, p. 3 (Docket No. 15, Att. 7).

**REPORT AND RECOMMENDATION - 16**

At issue is when the denial letter should be considered as received by Plaintiff because he received two copies of the letter—a copy by email on November 30, 2001, and the original by mail on January 8, 2002.  Plaintiff avers that he left Mexico to visit the United States on December 15, 2001, and returned to Mexico on January 8, 2002.[12]  *Abud-Mendoza Second Affidavit*, ¶ 6 (Docket No. 28, Att. 1).  He claims he did not receive Aetna's denial of benefits letter before he left for the United States, but received it upon his return to Mexico on January 8, 2002.  *Id.*  By letter dated February 25, 2002, Plaintiff requested his claims file from Aetna and also indicated his intent to appeal Aetna's denial.  *Abud-Mendoza Second Affidavit*, ¶ 7 (Docket No. 28, Att. 1).  Counting the sixty days from January 8, 2002, Plaintiff timely sought review.

Aetna, however, notes that one of its specialists emailed a copy of the letter to Plaintiff, at Plaintiff's request, on November 30, 2001.  The email contained the notation: "Attached is the letter concerning your claim.  The original is being mailed to you."  *Seccombe Second Affidavit*, Ex. 3 (Docket No. 34).  Plaintiff advised Maryanne Barry, an Appeals Analyst with Aetna, that he "understood that the email notification [he] received on November 30 was a draft of a final letter which [he] would eventually receive in the mail."  *Seccombe Second Affidavit*, Ex. 5, p. 1 (Docket No. 34).  Nothing in the email states that the letter is a draft.

On the other hand, the letter Plaintiff received on January 8, 2002, states that "[w]ritten request for review must be mailed or delivered within 60 days *following receipt of this explanation*."  Because Aetna chose to send two notifications to Plaintiff, Plaintiff received the

---

[12]  It is notable that Plaintiff's attorneys in Mexico filed the complaint that initiated the Mexico litigation on January 7, 2002, the day before Plaintiff avers that he returned to Mexico and received the final benefits denial letter.  *Seccombe Affidavit*, Ex. 1, p. 10 (Docket No. 25, Att. 2).

**REPORT AND RECOMMENDATION - 17**

explanation on two occasions, a circumstance that provided two dates from which he could calculate the sixty day time period. *Abud-Mendoza First Affidavit*, Ex. 9, p. 3 (Docket No. 15, Att. 7). In addition, although the regulations in effect for claims filed on or after January 1, 2002 allow for "written *or electronic* notification of any adverse benefit determination," 29 C.F.R § 2560.503-1(g), (o) (2001) (emphasis added), the regulations in effect at the time Plaintiff filed his benefits application did not specify that notice could be in written or electronic form, *id.* at § 2560.503-1(f) (2000).

Under these circumstances, and considering the policy expressed in the regulations that notice of any adverse benefit determination should be "in a manner calculated to be understood by the claimant," 29 C.F.R. § 2560.503-1(g) (2001); 29 C.F.R. § 2560.503-1(f) (2000), it is appropriate to resolve inconsistencies in the notice provided in favor of the non-moving party. For these reasons, it is recommended that the Aetna Defendants' request for summary judgment in their favor on counts one, two, and three be denied.

## V.

## RECOMMENDATION

Based on the foregoing, this Court recommends the District Court enter an order as follows:

1. Defendants' Motion to Dismiss (Docket No. 8) be GRANTED, in part, and Plaintiff's state law claims (counts four through six) against both the Aetna Defendants and Accenture be dismissed. It is also recommended that the Motion to Dismiss be DENIED, in part, on count three, as it relates to the Aetna Defendants and that count three be dismissed as it relates to Accenture.

**REPORT AND RECOMMENDATION - 18**

2. Plaintiff's Motion for Partial Summary Judgment (Docket No. 12) be GRANTED.

3. The Aetna Defendants' Cross Motion for Summary Judgment (Docket No. 25) be DENIED.

4. Plaintiff's Motion for Leave to File Plaintiff's Third Affidavit (Docket No. 38) be GRANTED.

5. The parties' joint request to extend the deadline for completing initial disclosures to December 8, 2006 (contained in the *Second Joint Status Report*, ¶ 8 (Docket No. 46)), be GRANTED.

6. The stipulations contained in the Second Joint Status Report (Docket No. 46) be approved and the Plaintiff required to file an amended complaint within two (2) weeks of the filing of the District Court's order regarding this Report and Recommendation.

Written objections to this Report and Recommendation must be filed within ten (10) days pursuant to 28 U.S.C. § 636 and District of Idaho Local Civil Rule 72.1.  If written objections are not filed within the specified time, the right to raise factual and/or legal objections in the Ninth Circuit Court of Appeals may be waived.

DATED: **November 20, 2006**.

Honorable Larry M. Boyle
Chief U. S. Magistrate Judge

REPORT AND RECOMMENDATION - 19